and Raman. Good afternoon, your honors. This is David Kessler. I'm an assistant U.S. attorney in the Eastern District of New York. I'm joined by my colleague, Kevin Trowell, for his third appearance of the day. And together we represent the government. And I believe I've reserved three minutes for rebuttal. You have. Thank you. The district court's order releasing the defendants on bond should be reversed. And what I want to focus on here is the core issue, the danger to the community. Congress determined that there's a presumption that no condition or combination of conditions can keep the community safe from an individual who violates Section 844I. And that's the case here. This is not a case about a youthful indiscretion or crime of passion. It's about a lives of innocent civilians and first responders who had more Molotov cocktails ready and who encouraged at least one other person to join them. These were lawyers, in particular, who had every reason to know what they were doing was wrong and who knew the consequences. And committing this crime required essentially a fundamental change in mindset for them. And so that that's really what the core of the case is. Now, as we mentioned in our briefs. So are you essentially arguing that we should just find this is clearly erroneous? I mean, that that's that's the import of what you're saying about piling up the various facts and making an argument that those facts point in a different direction than the one that the pretrial services officer, the magistrate judge and the district judge concluded. That's part of it, Your Honor. I mean, we've raised two points. The first is that there's a legal presumption that was not addressed by the district court. And the second is that even setting that aside, the district court finding on the facts. Well, that's first legal error point. You're saying that the district court failed to recognize that there is a you know, even though even though these are judicial officers who've been on the bench for a long time, have encountered countless cases where there is a presumption of detention, because that presumption is way broader than crimes of the seriousness of this one. And have, you know, applied this day in and day out for years. And it was addressed by the disregarded it just gave no force to the presumption. Your Honor, on this record, the presumption is not addressed by the district court. And in fact, if you read GA 85 to 86, which are the district court findings, those findings would read exactly the same whether or not this was the case with the presumption. There's just no reference to and say, really, you should have to address the presumption in this case. This is a very serious matter. And you should reassess the judgment, expressly taking that into account. That is that is certainly one option before this court, we've certainly set forth at the court. Well, that would be would that not be the logical thing to do? If the error is the failure to a different point, which is that no reasonable judge could have reached the conclusion, at least after applying the presumption properly and taking into account all the specific facts of this case, that there are conditions of release that would be adequate if we agreed with that, then the logical thing to do would be simply to, as the government asks, reverse and order the defendants detained. But that's a different argument than the argument about a legal error in explaining things. That's correct. It's a legal error in explaining and considering things. And so, yes, I agree. If the court were not inclined to reach the clear error issue or disagreed on that, then the court should remand on the question of the legal error. And at this point, because there's an indicted case, I think it would be expedient for the remand to go to the district judge who now has the case rather than back to the miscellaneous judge. But that's certainly an option for the court. Mr. Kessler, Judge Newman. It's your point that the presumption wasn't explicitly considered, or is it that there is no finding that the presumption was rebutted as the statute requires? I think it's both, Your Honor. As I said before, a review of the record of what the district court actually found shows that the presumption was not discussed by the district court and that was no finding. Is it a requirement under the statute that the district judge make a finding that the presumption has been rebutted? I believe that is a requirement. As to the specific words the district court must use, the case law is a little less clear on that. But the court has to consider it. There has to be the burden shifting if necessary. And then the presumption continues to be a factor weighed in the detention and out. Well, in other words, supposing a judge explicitly referred to the presumption and said, I know there's a presumption here, but I'm going to either way detain the people or release people. I'm aware of the presumption. Are you saying that's not ever enough? There has to be a finding that it has been rebutted. Well, I think there has to be a finding that it's rebutted. I think the question is whether there are circumstances in which that finding could be implicit rather than explicitly stated. I think what our position here is that where there's simply no discussion or reference to the presumptions at all, that is insufficient under the statute. And the court doesn't have to reach what... Oh, excuse me. Yeah, go ahead. Well, one minor on the presumption. In your brief repeatedly refers to the presumption. Does your brief ever... And of course, the presumption, the statute is worded as an offense listed in another place. Does your brief ever link the 844I offense to the presumption statute? I didn't see it, but maybe it's there. Do you see what I'm saying? I believe I understand the question. And so I don't remember every reference in the brief. I know it is in the detention memorandum that's attached, and I believe it's explicit in the but there's a sub... No, the reference to the presumption is in... Certainly, it's in the early papers. But what I didn't see is a linkage in your papers of the presumption to the list of statutes to which the presumption statute at first refers. We can find it, of course. Hello? Yes, I'm still here. Sorry, I don't know what that was. There was some extra noise. All right. All I'm suggesting is I don't think you did it that way, and it would be helpful when the government has a presumption case to not only say there's a presumption, but the charge defense is one of the listed statutes that triggers the presumption. I understand, and I apologize if that's not clear. Page 10 of the general appendix is certainly one page with the government's detention memo that links the statutory framework to 2332BD5B. Excuse me. You have a minute left. I just think it would be good to always do that in the body of the brief. Understood. So, I'm happy to address other questions in my remaining minutes. I've also reserved some time for rebuttal, but I think the key points are that there's just nothing in this record that shows the district court wrestled with the presumption. That's different than saying the district court wasn't aware of the presumption, but there's nothing showing it was that at least leads to a remand. But I think in your colloquy with Judge Lynch, maybe I'm wrong, that you were also urging us to say this is not a proper case for release at all, which implies that you're inviting us to say the district court's view of adequate conditions to guard against dangerousness is clearly erroneous. You are inviting us to say that, absolutely. Yes, that's early on in our brief, and it's our consistent position. I was just focusing on the presumption that we were discussing, but I think we've laid out. You are not limited to that. I just wanted to be clear. Yes. Okay. Yes. So, thank you. Thank you. Mr. and Mr. Kessler, you've reserved some time for rebuttal. So, yeah. All right. Mr. Schechtman, are you proceeding first or Ms. Froth? Yeah. I'm going to start at what I think is the obvious starting place, and that is, as Judge Lynch noted, the standard of review here is clear error. Is there a firm conviction that a mistake was made below? On top of that, we know under the bail reform statute that if there is clear and convinced that there needs to be clear and convincing evidence that the conditions imposed don't protect the community, which is to say there needs to be a high degree of certainty. Those two standards, the standard of review, the burden of proof, could give us a leg up appeal. I want to address the presumption issue first. I would point out the following. I would point out that there was no objection before Judge Brody telling her that she hadn't considered the presumption. I'd also point out that there's no mention of the presumption in the government state papers to the state panel. Now, that suggests to me that this is an appellate afterthought. The issue was raised by one of the judges on the state panel. The presumption was in the government's memo, front and center. The judge said that she read the memo. This is, as has been pointed out, an extremely experienced judge, an extremely experienced magistrate judge, 20 years of experience, probably several thousand such cases. There is no requirement that one mount any words here. But this judge did say this. She said she considered this crime completely lawless. She considered it reckless. She considered it violent. In a wonderful, thoughtful opinion going way back to the beginning of this statute, Judge Breyer in the first department talked about this presumption, that it wasn't a bursting bubble, that if it was to show that Congress had a general concern about this category of cases. And he said quite wisely, insofar as the judge shares Congress's general view, the presumption may not make much difference. It is clear, abundantly clear, that the judges below shared Congress's view that this was a And she asked it twice of both lawyers. What tells us that they won't do it again? Now, that is precisely the question a judge should ask, because that shifts the burden of production to the defendants. And the defendants produced. They talked about the fact that this was an aberrant act by two thoroughly decent young people, people who, if you put this night aside, you would be proud to have as a daughter, a son, or your child to have as a friend. It was an act that grew out of frustration and anger. It was a sobering experience, the arrest for both of them. It has become more sobering. They have both woke up in solitary confinement in the MDC in the midst of this pandemic. But they woke up before, because they woke up on Monday night, Tuesday night, and took no adverse action, which is hardly surprising. The bail package here is not insignificant. It is home confinement and a bracelet, and a bracelet that is an increasingly powerful device. It is friends and relatives, in Ms. Rahman's case, six of them, on the hook for $250,000, none of them rich. And so if you combine all of that and say to yourself, is there a realistic possibility that this young woman will commit another act of violence, assuming she committed this one? Is there a realistic possibility? It is hardly surprising that the retrial services, the two judges below, reached the conclusion that these conditions were specific. To send this back. You have a minute left. Thank you. To send this back, for someone to mouth the word presumption, for a judge to do it who has done this for a decade, who before that was a senior person in the Eastern District Office, quite senior, and to say to her, you didn't recognize that there was a presumption, respectfully, is the meaning of a very good judge who thought hard about it, who recognized the seriousness of this crime as alleged, and who said, tell me why you won't do it again, and believed the reasons that were forthcoming, and imposed what are very serious conditions here, and conditions that will make sure this doesn't happen again as this case moves forward to what, given our pandemic, may be a long stretch. So, I ask. Mr. Schechtman. Yes. Judge Newman. Your point, I follow the point, which, that it's aberrant in the sense that one would not expect two people who have been members of the bar for a number of years to be so caught up in a protest that they would not only do something instantly, but would go and buy materials to make a bomb, and have an hour, there's an hour, I think that's at least an hour lead time, or gap between the purchase and the hurling of the bomb, that within that hour, they don't cool down, that competent lawyers are willing to risk their career by not cooling down within that hour. What is the reason to think that if back on the street in another protest, they wouldn't be symbolically provoked? Well, Judge, I think that there's a two-part answer to that. One is that the conditions imposed do not allow them back on the street. It allows them in home detention with electronic monitoring, where they've already- That's assuming they obey the law. Well, the home detention doesn't, they're not, they're not, they're not handcuffed to anything in it. They have a bracelet. But if they are provoked enough to throw a bomb, they might well be provoked enough to go out on the street and join the protest that is in their neighborhood. Judge, you can't imagine what a sobering event this arrest was for this young woman. Mr. Shuckman, I can't imagine how these people did what they're shown on video to have done. I find the whole case unimaginable. But having seen it happen once, I'm wondering why it is so unimaginable that it would happen again. I think because that night was really unique. It was a young, young people, not just these two people, out to protest police violence who saw more of it. This doesn't take a requires sort of walking into a convenience store and you get this material, right? But one can lose one's sense in a moment or even in an hour on an evening like this. Bob Morgenthau, who I worked for, once talked about certain crimes as stupidity in the first degree. And this was foolish and aberrant. But there's nothing in this record, in these people's history, no, they're not members of any organization. They're not anarchists. They've lived estimable lives. They've given their lives to the indigent. There's nothing to suggest with the family and relatives on the hook. Well, excuse me, Mr. Shuckman, you know, going back historically, one of the tragic things about these, the events leading to these protests is that these are not new problems, and they haven't been cured in our society. But that also means there was another era when people went out into the streets in the thousands, tens of thousands, hundreds of thousands to protest racial injustice, plus an unjust war. Most of them were peaceful. A certain number, not an insignificant number, were moved to break laws. But a very tiny minority, including people who had extraordinary pedigrees, people who, like these defendants, had high level educations, had every reason to think twice about what they were giving up, who wound up blowing up the townhouse in Greenwich Village. And before they did it, you would have had much the same argument to make. So what Judge Newman is raising is when people respond at this level, that is indeed aberrant. It's aberrant, not just for, as you put it, for these people given their history, but it's aberrant in the context of people who are outraged. It's aberrant in the context of the people who were demonstrating. It's even aberrant in the context of people who were moved to commit acts of vandalism of a minor nonviolent sort. So that, I think that's what is necessarily of concern in a case of this particular nature. Judge Lynch, I understand the concern, and you'll give me a minute to do it. Think of these people as compared to the Greenwich Village people. They were members of a criminal organization. They were at it for years. It was not their only event. They were totally and wholly at war with society. If you look at the video, and it sounds like you have, this is a car parked away from other people. It's not an act that one should be proud of, but it also is not an act in which one was intending to harm another person, and therefore radically different in the radicals in that case. And the question here is, with the passage of time, can you trust these two decent young people to come to their senses, to protect their friends and relatives who are on the hook here, and to follow the law? And the proof really isn't the pudding. Our city doesn't look at all like it on the Monday, Tuesday, Wednesday, Thursday, Friday, when these events happened. And Monday, Tuesday, Wednesday, Thursday, Friday, they stayed at home with a mother in my defendant's case, with foster children in Mr. Madison's case, and given the opportunity, that is where they will be. The question is, do they need more? And two very good judges below said, this is sufficient. And if you believe they consider the presumption to say they clearly erred, to say you have a firm conviction that they made a mistake, right, I think is something that can't be said on this record. And so I ask you- One other thing, when you refer to the act itself, the government has evidence, perhaps it'll be disputed at some point, but they have called to our attention evidence that the car in which the defendants were when stopped contained other Molotov cocktails. So the focus on the one throwing sort of puts aside at least what the government says is evidence of a serious risk of other episodes. And Judge, I don't know enough to respond to the facts on that as to what else is in this vehicle at this stage. But all I can say is, it is of a piece. It is of one night where really fine people lost their way if the government is to be believed. And the question is, can they be trusted to stay home with an ankle brace? Well, all I'm suggesting is that it would be one thing if a person caught up in the moment of a protest, saw a Molotov cocktail sort of lying on the sidewalk that somebody had dropped, and in a moment of complete outrage, picked it up and hurled it. That would be ill advised, but that would be arguably a momentary lapse of judgment. But when somebody is driving around, first it takes an hour between acquiring the materials and using them, and then drives around in a car with others which are available to use elsewhere, that's different from a spur of the moment instantaneous decision. Whether it's enough to reverse is another question, but it is different from an instantaneous decision. Judge, I don't mean to be flip and maybe this is a spur of an hour decision, but realize that they drove around until they found an empty police vehicle that had been badly vandalized, where there wasn't a crowd of people around. Now, that suggests people who, if it's to be believed, who were caught up in the moment, but had enough sense about them to pick their target so that no one would be harmed. And if there was enough sense on that crazy night, there is ample sense that home confinement, the bracelet, and the conditions imposed below will be sufficient. Thank you, Mr. Shachman. Ms. Roth? Good afternoon, Your Honor. May I proceed? Yes, please do. Thank you. May it please the Court, this is Sabrina Shroff on behalf of Mr. Mattis. The government is required here to show that the district court, which is Judge Brody, a district court judge who was raised as a prosecutor in the Eastern District of New York, somehow committed clear error when she found that the government had simply not met its burden by clear and convincing evidence that Mr. Mattis was such a danger to the community that no conditions could be set to reasonably assure the safety of the community and others. That is what the Bail Reform Act requires. And if I may just address first what Judge Brody had before her. So Judge Brody, as she notes in the transcript, I believe it's at appendix page 86 and 87, she had before her the government's detention memo. The government's detention memo laid out, I'm sorry, was there a question? No, no, please proceed. Thank you. So the government's detention memo didn't just lay out the presumption, it details the facts, it applies the facts to the presumption, and then it continued to talk about each and every fact that they now ask this court to simply second guess about, which this court should not do. Judge Brody knew all of these facts and they were all put before her. She knew, for example, that the government's argument was that this was a deliberate act, according to them. The government argued and presented to her both in the detention memo and again at oral argument that this was conduct that was so egregious and not aberrational. They made the same argument to Judge Gold and three entities, three, the pre-trial services department, which has years and years of experience is the only objective party here other than a court, found that regardless of the conduct, which is simply one element under the bail reform act, did not call for detention. Judge Gold asked the government, specifically asked, when the government argued that Mr. Mattis was irrational, Judge Gold asked the government, do you have anything beyond this one day? The government said no. The government had no response that suggested that during the time Mr. Mattis was at St. Andrew's School in Delaware, at Princeton University, at New York University School of Law, that he was anything but the person that they want you now to that is clearly not who Mr. Mattis is. And the court not only considered those facts, but she applies the presumption. And we know she applied the presumption and the government knows she applied that presumption because they didn't raise it below. On government appendix 86, after the judge has ruled, after Judge Brody has ruled, she asked Assistant United States Attorney Richardson, is there anything further? He did not raise, well, Judge Brody, you forgot to apply the presumption. Well, Judge Brody, you were wrong because you did not wrestle with that record. There wasn't a need for her to wrestle with the record. Neither Mr. Sheffman nor I argued that the presumption did not apply. In fact, we embraced the presumption and told her why we had met the burden of production. She asked me, she asked me, how do I know that your client will not receive the conduct? What is she doing there? She's shifting the burden of production to me. I explained to her why, and then she shifts the burden of persuasion back to the government. That's the government. You have a minute left. That the government was not able to show or bear its burden should not be an invitation for them to come to you and say, overrule what Judge Brody did as a district court judge who was once the chief of the criminal division for the Eastern District of New York. Unless the court has any questions, that is my argument, and I ask you please to endorse the order of Judge Brody and grant bail. Thank you, Ms. Shroff. Mr. Kessler, you've reserved some time for rebuttal. Three minutes. Thank you, Your Honor. I'd just like to make two points. The first is, I think, both defendants have argued explicitly or implicitly that it's, you know, quote, not realistic that they will reoffend. And I think there's two responses to that. The first is that the prior panel decision in our stay motion, which is not binding on this court, but we submit and persuade the authority, certainly inconsistent with that view. It hasn't been mentioned yet. And the second is... But what exactly are you saying about the action of the stay panel? How should we consider that? I think the most relevant consideration is that to grant a stay, the prior panel would have had to harm to the government if the defendants were released. And if the bail conditions were sufficient to mitigate any danger to the community, that would be a hard finding to make. So I think the implicit conclusion is that the bail conditions... State your latter point again, please. I didn't quite understand. Sure. So if the bail, the prior panel had concluded that the bail conditions sufficiently addressed a danger to the community, then it would have been difficult to conclude that there would have been irreparable harm from the defendant being released. Yes. And what weight are you saying we should give to that? It's simply persuasive, Your Honor. I'm addressing the point that... It's persuasive enough. I mean, let me, to start where you started, defense lawyers, you know, understandably want to make the best possible case for their clients. And so they say strong things and they say things like that we can be certain these people won't do this again, and they are fine people and all of that. None of which I would say we know for a fact. But the issue here is whether, and correct me if you think this is not the issue, whether we should conclude that essentially no reasonable judge could have done what the judges below did. That is to say that we have a firm conviction that they are wrong in their assessment of this situation. Isn't that what the issue is before us? That's the, that is essentially the issue on the clear error portion of the argument. And I think the point that's been, that really needs to be confronted with squarely is on this record, defense counsel have essentially been asserting that this was a, you know, four hour long calculated and premeditated blip. And the record is simply more consistent with, you know, if I'm going to, I'll steal another ancient Rome analogy, you know, with a crossing of the Rubicon. This is a fundamental change for two lawyers who have practiced law to go this far, excuse me, this far from any. Yeah, both sides stress the fact that these people are lawyers. And I must say, I'm not all that persuaded by either side. From the defense side, well, these people are lawyers. Well, yeah, if they weren't lawyers, I doubt we'd be here having this argument. I think they'd probably be detained. But now we're hearing from you that the fact that they're lawyers somehow makes it more appropriate to detain them than if they were grocery store clerks or doctors or anybody else in society. Really what you're relying on is that this is such a bad thing to have done and such a dangerous thing to have done that nothing really in the bail conditions or in their prior spotless record could possibly warrant bail. Isn't that really what your argument has to be? No, absolutely. That's the argument. Whether or not they're lawyers, we would be making this exact same argument. Well, I take it, at least I don't understand you to be saying they should be detained because they are lawyers. I understood your argument to be they should be detained because if people who are lawyers are willing to do an act like this, it tells us something about their dangerousness that warrants detention. Isn't that your point? Yes. That's a much better articulation than I was making a few minutes ago. And are you accepting what was implicit in a prior question put to you that in order to agree with you here on the ruling, we have to find that no reasonable judge would have made the finding they made? Or is it simply that we need to do what we would do with any judge finding a fact, conclude that we have a firm conviction that an error of fact has been made, or the finding is erroneous? It's the latter, and that's why I said before that essentially what we were asking is I think what Judge Lynch was laying out. The standard is exactly as you've just articulated, and this court has reversed other bail decisions. I think we cited Mercedes as one example, applying exactly that clear error standard that you've just articulated. Now that standard was first articulated and repeated probably hundreds of times in the civil context, but I take it you're saying it has also been applied in the bail review context. That's correct. We cited U.S. v. Mercedes, which is 254, F-3rd, 433, and I believe that will lay out the clear error standard, but certainly that's the standard that applies here. Which obliges an appellate court not to reverse unless they have a firm conviction that a mistake has been made. Okay. Thank you. And then the final point I'd make here is just that remanding this case for a district court judge to consider the presumption and whatever factors there may now be for the record is not demeaning in any way to a district court judge. It's simply the case here that there is an error of law that this court can address. So if there are no further questions, we'll rest on our papers. Mr. Kessler, this is Judge Hall. Would you agree with what I understand to be what one of the counsel pointed out, that the government didn't raise the issue of the presumption before Judge Brody? I wouldn't agree with that. I mean, it's in the government's papers, and it's also mentioned in the government's stay application, although it was not the focus of the stay application. Yeah, but the stay application before Judge Brody. Okay. Gotcha. All right. Oh, no, no. I'm sorry. To be clear, the presumption was raised in the government's detention papers, which were before Judge Brody, and I was just adding that it was also raised in the stay motion to the prior panel in this court. Oh, okay. Thank you. That's all. Thank you very much. Thank you. Thank you all. We'll reserve decision in this matter. And that concludes our arguments for today. We have one case on submission, U.S. versus Grady. So I will ask the clerk, please, to adjourn court. Court stands adjourned.